STATE OF LOUISIANA

VERSUS

ALVIN JOSEPH ADAMS

NO. 23-KA-427

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 22-4415, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

April 24, 2024

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
John J. Molaison, Jr., and Timothy S. Marcel

**AFFIRMED;**
**REMANDED WITH INSTRUCTIONS**
    **MEJ**
    **JJM**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUB RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
      Honorable Paul D. Connick, Jr.
      Thomas J. Butler
      Monique D. Nolan
      Piper Didier
      Taylor Somerville

COUNSEL FOR DEFENDANT/APPELLANT,
ALVIN JOSEPH ADAMS
      Lieu T. Vo Clark

**JOHNSON, J.**

Defendant, Alvin Joseph Adams, appeals his 30-year sentence for possession of pornography involving juveniles under the age of 13 rendered in the 24th Judicial District Court, Division "E". For the following reasons, we affirm Defendant's sentence and remand the matter to the trial court with instructions.

## FACTS AND PROCEDURAL HISTORY

On October 4, 2022, the Jefferson Parish District Attorney filed a bill of information charging Defendant with pornography involving juveniles under the age of 13, in violation of La. R.S. 14:81.1(E)(5)(a).[1] Defendant was arraigned on October 11, 2022, and entered a plea of not guilty. The case proceeded to trial on May 9, 2023.

At trial, Agent Brian Brown testified that he was a supervisory special agent for the Attorney General's Office, and he investigated internet crimes against children.[2] Agent Brown testified that social media platforms reported illegal activity such as child exploitation to the National Center for Missing and Exploited Children ("NCMEC"). NCMEC would then send a lead to the law enforcement agency of the state from which the IP[3] address originated. Agent Brown explained that his office received all of the cyber tips for Louisiana. An electronic service provider ("ESP") would send a tip to NCMEC about possible child pornography activity.[4] An ESP would send identifiable information about a user, *e.g.*, a user name, e-mail address, date of birth, and phone number, if it was associated with the set-up of an individual's account. The Attorney General's Office would receive

---

[1] The bill of information provides that the offense was committed "on or about" September 8, 2022. The bill describes the offense as "pornography involving juveniles by intentionally possessing, distributing or possession with the intent to distribute any photographs, films, videotapes, or other visual reproductions of sexual performances involving children under the age of 13."

[2] The trial court accepted Agent Brown as an expert in the field of child abuse investigations.

[3] Agent Brown testified that IP stood for internet protocol. He stated that an IP address was the address of one's internet that showed where a computer logged in through a router. He explained that it could only go back to one residence or one business at a time.

[4] Agent Brown testified that examples of electronic service providers were Google, Microsoft, and Facebook.

the information with the incident reporting time, the IP address that was used, and any identifiable information.  Agent Brown explained that many cyber tips received would not reach the criminal threshold in Louisiana; so, many cases were closed down.  His office would examine the cases to determine if the cyber tip involved child pornography and met the definition of the crime in Louisiana.

Agent Brown testified that he became involved in the instant matter *via* two cyber tips from NCMEC.  He reviewed the tips and saw that the images met the definition of child pornography involving juveniles provided by the statute.  The target address associated with the IP address was identified, and he prepared a subpoena.

The first cyber tip was Cyber Tip 128343072.  The tip contained a summary of the complaint and stated that two files were uploaded by the user.[5]  The tip stated that NCMEC received the report from the ESP on July 5, 2022.[6]  The report indicated that the ESP used was Microsoft Bing, a search engine.  Agent Brown explained that Microsoft Bing was similar to a Google search engine and allowed a user to search by "dragging" a photograph into the search bar, and the result would show "like images."  The report contained an incident time, which was when the file was uploaded onto Microsoft Bing.  The report also contained the uploaded images, which were reviewed by Agent Brown.  After he reviewed the images and determined that it was child pornography, he submitted a subpoena to AT&T to determine where the files were uploaded from.[7]

The second tip, Cyber Tip 128374759, provided that one uploaded file was received.   The cyber tip was received on July 5, 2022, the same date as Cyber Tip

---

[5] Agent Brown explained that NCMEC did not report "downloaded stuff."  He explained that NCMEC reported uploads "where someone had to save the image and then put it in and upload it to a network."

[6] Agent Brown testified that the time was displayed in "UTC," which he explained was military "Zulu" time.  He explained using a standard time was important because the IP address can change if the investigators do not go to the "exact minute" when it was used and could lead them to the wrong target.

[7] The NCMEC report indicated that AT&T was the internet service provider.

128343072. Microsoft Bing was also the ESP that reported to NCMEC. Agent Brown subpoenaed AT&T and received a subpoena response. The address provided by the subpoena was 3715 Beauvais Street, Metairie, Louisiana, which was the address of Defendant. Agent Brown applied for a search warrant of the residence, and it was executed on September 8, 2022. When he arrived at the residence with other law enforcement, he had a recorded conversation with Defendant. Law enforcement searched the residence for electronic devices, computers, thumb drives, hard drives, or anything that could have been used to download the material. Law enforcement located electronic devices on the second floor.[8] The second floor was separated from the first by a piece of plywood on the stairs. Agent Brown testified that, when the plywood was moved, a computer room with many computer screens and electronics was located. Photographs were taken of the area.

Agent Brown testified that Agent Randall Gohn conducted the forensic examination of the electronics found in Defendant's residence. Child pornography was found on the hard drive of Defendant's Alienware computer, and Agent Brown prepared an arrest warrant for Defendant. Agent Brown testified that over 800 images and videos of child pornography were found on the Alienware hard drive. Agent Brown stated that, based on his experience as an investigator in child crimes, he was able to identify that the children were under the age of 13.[9]

On cross-examination, Agent Brown testified that he was not aware of whether the Alienware computer was plugged in nor whether the router was connected to the internet when he arrived on scene. He also testified that when he spoke to Defendant, Defendant stated he lived there alone, and he did not get

---

[8] Agent Brown testified that photographs were taken of the scene. Defendant's driver's license and mail with his name and address were found in the residence.

[9] Agent Brown testified that he searched for images on Defendant's devices where the children "have no breast development, there's no breast buds, there's no pubic hair, the person is obviously under the age of thirteen."

information on the previous residents. Defendant informed Agent Brown that he had lived at the residence for two to three years.

Detective Michael Cooke testified that he worked with the Criminal Intelligence Center. One of his job duties was to verify calls from the Securus System, which is the system that inmates use to make phone calls and video visitations. The Jefferson Parish Sheriff's Office provided the State with an inmate recording of Defendant. The call was between Defendant and his employer or boss, from whom Defendant asked for help regarding his bail. He also stated that he was playing on a website and downloaded a "Trojan thing" and expressed "now I'm screwed."[10]

Special Agent Randall Gohn testified that he was a supervisory special agent with the Louisiana Bureau of Investigation, Cyber Crime Unit, and the supervisor for the Baton Rouge Attorney General's field office. He testified that among other duties, he reviewed NCMEC cyber tips. Agent Gohn testified that he was also qualified as a forensic examiner.[11]

Agent Gohn testified that he was assigned to the forensic examination of the devices that were seized from Defendant's residence, and he was present during the search. He testified that devices were found on the second floor of Defendant's residence in a computer room that had multiple monitors and computers. Agent Gohn produced a search warrant inventory, which was a list of all of the devices that were seized from Defendant's residence. Agent Gohn examined Defendant's Alienware hard drive at the scene and found over 50 images of "child exploitation imagery." Agent Gohn testified that he stopped counting at 50 images "because there was quite a significant amount more." Two additional analyses were

---

[10] The State played the jail call in open court and stopped the recording at three minutes and thirty seconds. Detective Cooke did not testify as to the details of the call.

[11] The trial court accepted Agent Gohn as an expert in the field of cell phone and computer forensics extraction.

conducted on the device. One analysis was done in the lab that Agent Gohn assisted with and the other was done to validate his findings.[12] Three reports were produced as a result of the investigation, including a scene analysis completed by Agent Gohn.

The first report, which was made on scene, indicated that the files found were on the Western Digital hard drive that came out of Defendant's Alienware computer. Agent Gohn testified that image 122 was "located on the 'C' drive, the user's folder, the RUEAJ user, the desktop, in a folder on the desktop called 'porn.'" The image was contained in multiple folders, the last one entitled "spread." The file located was "Image 2025.JPG." Agent Gohn testified that "spread" for any pornography meant "legs spread open." Image 125 was found on the desktop in the "porn" folder in a file titled, "Barbie." The file was "22282.JPG."

The second report, which was prepared at the lab with its personnel, was produced by Raymond Hughes with Agent Gohn's assistance. The report contained a tab entitled "keyword matches."[13] One of the keywords found was "Lolly," which was found four hundred and six times in a file name or on something in Defendant's computer. "PTHC" was found on the computer 53 times. "PTSC" was found on the computer 53 times. "Child porn" was found on the computer 52 times. "Asparagus" and "Lolita" were also found on the computer.[14] A tab titled "user accounts" provided that the user had visited a

---

[12] Agent Gohn explained that when examining a hard drive on scene, a device called a "write blocker" was used which restricts the investigator from adding or manipulating any data on the hard drive or piece of evidence. He testified that when an investigator examined a hard drive on scene, he actively worked on the actual hard drive. A copy of the hard drive is later made by the lab to ensure nothing is manipulated.

[13] Agent Gohn testified that keyword matches were produced when an individual typed something on his or her computer. He explained that a substantial list of keywords existed that were associated with child sexual abuse file names.

[14] Agent Gohn testified that "PTHC" stood for "pre-teen hardcore," "PTSC" stood for "pre-teen soft core." "Asparagus" was a term used in the child pornography community for a small male or baby's penis. "Lolita" was a well-known "series" from the late '70s and early '80s of child sexual abuse material.

website with a Fidelity account username, "Alvin Adams."

The third report was conducted for more in-depth detail. The report contained a tab titled "rebuilt desktops." Agent Gohn explained that a computer saves and stores where a user saves things. As such, an examiner can take a hard drive and recreate what the desktop looked like. Agent Gohn testified that one of the folders found on Defendant's desktop was entitled "porn." An Entergy bill with Defendant's name and address was also located on the desktop. In addition to the child pornography found on the device, pictures of Defendant were also found on the desktop.

Agent Gohn testified that he ran the device for viruses and found that there were none present. In reference to a jail call by Defendant in which he talked about a potential "Trojan Horse" that could have been responsible for the child abuse material on his computer, Agent Gohn testified that he had never seen child sexual abuse material related to Trojan viruses. He explained that Trojan viruses typically try to obtain personal information from an individual's device. He testified that it was not possible for a virus to create a folder named "porn" or save particular images inside a folder.

At the conclusion of the trial, the 12-person jury returned a verdict of guilty as charged. On May 17, 2023, the trial court sentenced Defendant to 30 years with the Department of Corrections without the benefit of parole, probation, or suspension of sentence. On June 1, 2023, the defense filed a motion to reconsider sentence, which was denied by the trial court on June 12, 2023. The defense filed a motion for appeal on July 6, 2023, and the trial court granted the motion on July 11, 2023. The instant appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, Defendant alleges that the trial court erred in denying his motion

to reconsider sentence, and his 30-year sentence is unconstitutionally excessive.

## LAW AND ANALYSIS

Motion to Reconsider Sentence and Excessive Sentence

Defendant argues that the 30-year sentence imposed upon him as a 47-year-old person was essentially a life sentence and was unconstitutionally excessive. Defendant avers that a sentence must be based on the circumstances of the instant case, the background of the defendant, the proportionality of the sentence to the seriousness of the offense, and whether there is any societal purpose and need to the infliction of pain and suffering on the defendant. Defendant argues that at sentencing, the trial court "merely noted" that he was found in possession of over 800 images of child pornography before imposing the 30-year sentence. Defendant avers, however, that the trial court did not state any other aggravating factors to justify a near maximum sentence. Defendant argues that, except for the stipulation that he had a prior felony conviction for indecent behavior with a juvenile, there was no evidence that he had any other criminal history. Defendant avers that the trial court did not order a pre-sentence investigation to aid in sentencing. Defendant also argues that he was only convicted of possession of the images, and no evidence was provided to prove he was involved in producing, manufacturing, or distributing the files. Defendant avers that while the sentence is within the statutory range, the 30-year sentence imposed upon him is a needless imposition of pain and suffering and makes no consideration for the opportunity for rehabilitation.

The State responds there is no basis for Defendant's assertions that his sentence is unconstitutionally excessive, and the trial court did not abuse its discretion in denying the motion for reconsideration of sentence. As to Defendant's contention that the trial court erred in denying his motion to reconsider sentence, the State asserts that Defendant did not set forth any specific

grounds in his motion to reconsider sentence and only generally asserted that the sentence was excessive. The State argues that failure to make or file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence for unconstitutional excessiveness only.

The State asserts that Defendant's 30-year sentence is not excessive. The State argues that while the initial on-site examination of Defendant's hard drive revealed 50 to 60 images involving pornography of juveniles, a forensic examination revealed over 800 images and videos of pornography involving juveniles. The State argues that Defendant attempts to downplay the vile nature of the offense and fails to acknowledge his culpability and the harm caused by his criminal conduct. The State avers that while Defendant contends he was only convicted of possession of the images and there was no evidence to show he was involved in any production or manufacturing of child pornography, Defendant was no less culpable of the crime because the downloading and the possession of child pornography re-victimizes children. The State argues that Defendant's nature and background support the 30-year sentence due to his history of sexually assaultive behavior. The State argues that while comparisons with other similar cases are useful, the focus remains on the propensities of the offender and the circumstances of the case. The State contends that considering the totality of the facts and circumstances of the offense and the offender, the sentence imposed is neither grossly disproportionate to the severity of the offense nor shocking to the sense of justice.

Before sentencing Defendant, the trial judge stated he considered the sentencing guidelines in "Article 894.1," listened to the testimony, and watched the trial. The trial judge stated that Defendant was found in possession of over 800 photographs of children. After Defendant was sentenced to 30 years with the

Department of Corrections without the benefit of parole, probation, or suspension of sentence, the trial judge stated, "Mr. Adams, I usually have something to say at sentencings, but in your case, I'm at a loss for words. The photographs speak for themselves. It's horrendous what you did."

On June 1, 2023, the defense filed a motion to reconsider sentence. In the motion, Defendant argued that the sentence was excessive, pursuant to La. C.Cr.P. art. 881.1, and asked that a lower sentence be imposed. While the motion alleged that the sentence was excessive, specific grounds were not presented. The motion was denied on June 12, 2023. In denying the motion, the written order stated that "[u]pon review, the court finds that the petitioner is not entitled to the relief sought."

Failure to make or file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence for constitutional excessiveness only. *State v. Smith,* 16-406 (La. App. 5 Cir. 8/30/17), 227 So.3d 337, 363. This Court has held that when the specific grounds for objection to the sentences, including alleged non-compliance with La. C.Cr.P. art. 894.1, are not specifically raised in the trial court, then these issues are not included in the bare review for constitutional excessiveness; therefore, the defendant is precluded from raising these issues on appeal. *State v. Clark*, 19-518 (La. App. 5 Cir. 6/24/20), 296 So.3d 1281, 1291, *writ denied*, 21-62 (La. 3/9/21), 312 So.3d 585.

Here, Defendant filed a motion to reconsider sentence arguing the sentence was excessive. As pointed out by the State, Defendant argues on appeal that the trial court "merely noted" the amount of child pornography that he was found to be in possession of before imposing the 30-year sentence and did not state any other aggravating factors to justify the near maximum sentence. To the extent that Defendant is now arguing on appeal that the trial court failed to consider factors set

forth in La. C.Cr.P. art. 894.1, we find that Defendant is not entitled to review of whether the trial court complied with Article 894.1 and is limited to a review of his sentence for constitutional excessiveness. *See Clark*, *supra* (citing *State v. Hills*, 03-716 (La. App. 5 Cir. 12/9/03), 866 So.2d 278, 286, *writ denied sub nom. State ex rel. Hills v. State*, 04-1322 (La. 4/22/05), 899 So.2d 569; *State v. Escobar-Rivera*, 11-496 (La. App. 5 Cir. 1/24/12), 90 So.3d 1, 8, *writ denied*, 12-409 (La. 5/25/12), 90 So.3d 411).

The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. *State v. Calloway*, 19-335 (La. App. 5 Cir. 12/30/19), 286 So.3d 1275, 1279, *writ denied*, 20-266 (La. 7/24/20), 299 So.3d 69. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. *State v. Woods*, 18-413 (La. App. 5 Cir. 12/19/18), 262 So.3d 455, 460.

According to La. C.Cr.P. art. 881.4(D), the appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. *Calloway, supra*. The relevant question on appeal is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *See State v. Dixon*, 19-7 (La. App. 5 Cir. 12/30/19), 289 So.3d 170, 174, *writ denied,* 20-143 (La. 7/17/20), 298 So.3d 176. The trial judge is afforded broad discretion in sentencing, and a reviewing court may not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D). The sentence imposed should not be set aside as excessive in the absence of a manifest abuse of

discretion.  *State v. Hankton*, 20-388 (La. App. 5 Cir. 7/3/21), 325 So.3d 616, 623, *writ denied*, 21-1128 (La. 12/7/21), 328 So.3d 425.

In reviewing a trial court's sentencing discretion, three factors are considered: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts.  *Woods, supra*; *State v. Allen*, 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 880.  However, there is no requirement that specific matters be given any particular weight at sentencing.  *Woods, supra.*

Defendant was convicted of one count of pornography involving juveniles under the age of 13 and was sentenced under La. R.S. 14:81.1(E)(5)(a).  This subsection references La. R.S. 14:81.1(E)(1)(a), which provides the sentencing range for possession of pornography involving juveniles, without the specification that the juvenile is under the age of 13.  Both subsections must be considered to review Defendant's sentence in the instant case.[15]

> La. R.S. 14:81.1(E)(5)(a) provides:
>
> Whoever commits the crime of pornography involving juveniles punishable by the provisions of Paragraph (1), (2), or (3) of this Subsection when the victim is under the age of thirteen years and the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than one-half the longest term nor more than twice the longest term of imprisonment provided in Paragraph (1), (2), and (3) of this Subsection.  The sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
>
> La. R.S. 14:81.l (E)(1)(a) provides:
>
> Whoever intentionally possesses pornography involving juveniles shall be fined not more than fifty thousand dollars and shall be imprisoned at hard labor for not less than five years or more than twenty years, without benefit of parole, probation, or suspension of

---

[15] As a general rule, the law in effect at the time of the commission of a crime is determinative of the sentence the convicted must serve.  *State v. Sugasti,* 01-3407 (La. 6/21/02), 820 So.2d 518, 520 (citing *State v. Wright,* 384 So.2d 399, 401 (La. 1980)); *State v. Henry,* 17-516 (La. 5/26/17), 220 So.3d 706, 707 (citing *State v. Mayeux,* 01-3195 (La. 6/21/02), 820 So.2d 526, 530); *State v. Gonzalez,* 15-26 (La. App. 5 Cir. 8/25/15), 173 So.3d 1227, 1239.  Therefore, a district court must sentence a defendant in accordance with the penalty provision of a criminal statute in effect at the time the crime took place.  *Sugasti, supra* (citing *State v. Narcisse,* 426 So.2d 118, 130-31 (La. 1983), *cert. denied*, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983)).

sentence.

The sentence for pornography involving juveniles pursuant to La. R.S. 14:81.1(E)(1)(a) provides a range of five to 20 years at hard labor to be served without the benefit of parole, probation, or suspension of sentence. Defendant was convicted of pornography involving juveniles under the age of 13, and Defendant was over the age of 17; consequently, he was subject to the increased sentencing range under La. R.S. 14:81.1(E)(5)(a) of 10 to 40 years at hard labor to be served without the benefit of parole, probation, or suspension of sentence. Thus, in accordance with both subsections, the sentence for pornography involving juveniles under the age of 13 consists of a range of 10 to 40 years at hard labor to be served without the benefit or parole, probation, or suspension of sentence.

On May 17, 2023, Defendant was sentenced to 30 years with the Department of Corrections without the benefit of parole, probation, or suspension of sentence. While Defendant's sentence was over mid-range, it was not the maximum, as he could have received a sentence of 40 years for his conviction. The evidence presented by the State at trial indicated that over 800 images were found on Defendant's device. As such, we agree that the State had the ability to charge Defendant with many more counts based on the volume of images.[16] The State only chose to bill Defendant in the instant case with one count of pornography involving juveniles under the age of 13, and Defendant did not receive the maximum sentence for the conviction. Defendant states that the trial court did not order a pre-sentencing investigation to aid the court in sentencing. However, the

---

[16] The Louisiana Supreme Court in *State v. Fussell*, 06-2595 (La. 1/16/08), 974 So.2d 1223, 1238, stated, "[O]ne who intentionally possesses child pornography can be charged on a separate count, and sentenced separately for each count upon which he or she is convicted, for each child in each sexual performance captured within photographs, films, videotapes, and/or other visual reproductions that comprise the defendant's collection of child pornography." In *Fussell*, *supra*, the Louisiana Supreme Court held that "since [d]efendant in the instant matter possessed at least sixteen computer-printed photographs of a different child in a different sexual performance, we hold that the Third Circuit Court of Appeal improperly reduced defendant's convictions for the intentional possession of pornography involving juveniles to a single conviction."

Louisiana Supreme Court has held that there is no mandate that a trial court order a PSI and that it is merely an aid to the court and not a right of the accused. *State v. Bell*, 377 So.2d 275, 281 (La. 1979) (citations omitted).

Considering the nature of the crime, the record indicates that when imposing Defendant's sentence, the trial judge took into consideration the number of photographs that were found on Defendant's device. The trial judge also stated that he was at a loss for words, the photographs spoke for themselves, and what Defendant did was horrendous. Agent Brown testified that over 800 images and videos were found on Defendant's device. Defendant argues that his conviction was only for possession of child pornography, and there was no evidence that he was involved in any production or manufacturing of child pornography. However, as cited by the State, the Louisiana Supreme Court in *State v. Fussell*, 06-2595 (La. 1/16/08), 974 So.2d 1223, stated,

> Through its enactment of La. R.S. 14:81.1, the legislature intended to prevent any child from ever being victimized by punishing equally any of four types of offenders for each action that contributes to that child's sexual exploitation, including a defendant who intentionally possesses child pornography. Simply stated, preventing any child from being sexually victimized is the end to be achieved, and punishing both producers and consumers of child pornography equally is the legislature's chosen means by which to achieve this end.

*Fussell*, 974 So.2d at 1235.

We find that, in the instant matter, the minor victims continued to be victimized each time someone, including Defendant, downloaded that content to their devices.[17] We also take into consideration Agent Gohn's testimony that Defendant's collection of child pornography was carefully organized in folders on his desktop titled, "pornography," "spread," and "Barbie." Agent Gohn also

---

[17] In *State v. Baker*, 51,933 (La. App. 2 Cir. 4/11/18), 247 So.3d 990, 996, *writs denied*, 18-858 (La. 12/3/18), 257 So.3d 195, and 18-833 (La. 12/3/18), 257 So.3d 196, the defendant received a 15-year sentence for possession of pornography involving juveniles. The second circuit found no merit to the defendant's argument that the sentence was excessive and referenced the trial court's specific consideration that "every child was re-victimized with each download and use of the images depicting that child."

testified that no viruses were found on Defendant's device, and he had never seen child sexual abuse material related to a Trojan virus, which Defendant claimed in his jail call may have been responsible for the images found on his computer. Agent Gohn explained that it was not possible for a virus to create a folder named "porn" or save particular images inside folders. We consider the egregious nature of the crime, taking into account the vulnerable victims, considering their young age. We also consider the volume of Defendant's collection of child pornography.

As to the nature and background of Defendant, this Court stated in *State v. Garrison,* 19-62 (La. App. 5 Cir. 4/23/20), 297 So.3d 190, 210, *writ denied,* 20-547 (La. 9/23/20), 301 So.3d 1190, *cert. denied*, -- U.S. --, 141 S.Ct. 2864, 210 L.Ed.2d 967 (2021), "A trial court should consider the defendant's personal history such as age, family ties, marital status, health, employment record, as well as his prior criminal record, seriousness of offense and the likelihood of rehabilitation in determining an appropriate sentence." (citing *State v. Pettus,* 10-777 (La. App. 5 Cir. 5/24/11), 68 So.3d 28, 30, *writ denied,* 11-1326 (La. 12/2/11), 76 So.3d 1176). The record reflects that, at the time of the offense, Defendant was 45 years old and lived alone in a house in Metairie, Louisiana. The record also reflects that Defendant had a prior sex offense conviction. At trial, a stipulation was entered that Defendant was convicted of indecent behavior with a juvenile, in violation of La. R.S. 14:81, through a guilty plea on or about January 20, 2004, in St. Bernard Parish.[18] While the previous conviction occurred in 2004, we find that Defendant's sexual disposition toward children continued as evidenced by the large amount of

---

[18] On May 20, 2023, the State filed a Notice of Intent to Introduce Evidence under La. C.E. Article 412.2 or in the Alternative 404(B). A hearing on this motion was held on May 8, 2023, and the trial court granted the motion. The State avers in its brief that Defendant has a history of sexually assaultive behavior and a lustful disposition toward children. The exhibits submitted with the State's 412.2 motion provide that Defendant's relative reported that her niece, Defendant's daughter who was eight years old at the time, reported to her that Defendant sexually abused her. Defendant's daughter was interviewed by "Child Protection Services" and St. Bernard Parish Sheriff's Department. She stated that she lived with her father and grandmother, and Defendant would make her put her mouth on his penis and would touch her vaginal area. She stated it happened on two separate occasions. Defendant was arrested for aggravated rape with a victim under twelve in violation of La. R.S. 14:42.

child pornography found on his device.

In *State v. Bradley*, 22-381 (La. App. 5 Cir. 3/1/23), 360 So.3d 562, 573, a case cited by the State, this Court found that the defendant's 25-year sentence for six counts of pornography involving juveniles under the age of 13 was not excessive. At trial, it was revealed that the defendant had at least 60 videos and images of pornography involving juveniles under the age of 13 stored in his Dropbox account and 400 gigabytes that contained at least ten videos and images of pornography involving juveniles under the age of 13 on his personal storage devices. The trial court took into account the defendant's lack of criminal history and that he was a victim of sexual abuse. The trial court also recognized the defendant's acknowledgement of his wrongful conduct and his remorse. *Id.* at 572-73.

The Louisiana Supreme Court has stated, "While comparisons with other similar cases are useful in itself and sets the stage…the focus of sentence review remains on the character and propensities of the offender and the circumstances of the offense." *State v. LeBlanc*, 09-1355 (La. 7/6/10), 41 So.3d 1168, 1173 (citing *State v. Telsee,* 425 So.2d 1251 (La. 1983)). Furthermore, "Although a comparison of sentences imposed for similar crimes may provide guidance, '[i]t is well settled that sentences must be individualized to the particular offender and to the particular offense committed.'" *State v. Boudreaux*, 11-1345 (La. App. 4 Cir. 7/25/12), 98 So.3d 881, 891, *writ denied*, 12-1907 (La. 11/9/12), 100 So.3d 841 (citing *State v. Batiste,* 594 So.2d 1, 3 (La. App. 1 Cir. 1991)). Moreover, the relevant inquiry is not whether a different sentence might have been more appropriate but whether the district court abused its broad sentencing discretion. *State v. Smith,* 01-2574 (La. 1/14/03), 839 So.2d 1, 4.

The record indicates that in the instant matter, Defendant did not acknowledge his wrongdoing or show remorse. The State submitted a jail call that

Defendant made to his employer, in which he placed the blame for the child pornography on a virus, demonstrated a lack of acknowledgment of his wrongdoing or remorse. Defendant attempted to shift the blame from himself. He did not admit he was responsible for downloading the child pornography found on his computer.

We consider Defendant's lack of remorse and failure to accept responsibility for his actions, his previous conviction of a sexual offense toward his daughter, and the egregious nature of the instant crime. In light of the foregoing, we find that Defendant's sentence was not unconstitutionally excessive as he received a 30-year sentence with the potential to receive a maximum sentence of 40 years. The evidence showed that he possessed over 800 photos of child pornography. As discussed, the State had the ability to charge Defendant with many more counts in this matter, exposing Defendant to a potentially greater maximum sentence. We find that the record supports the sentence imposed by the trial court. Because the assignment regarding excessiveness lacks merit, we find that the trial court did not err in denying Defendant's motion to reconsider sentence.

Errors Patent Review

The record was reviewed for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990).

The record reflects that the trial court failed to inform Defendant of the sex offender registration requirements in accordance with La. R.S. 15:540, *et seq*. Defendant's conviction of pornography involving juveniles under the age of 13, in violation of La. R.S. 14:81.1(E)(5)(a) is defined as a sex offense under La. R.S.15:541(24). La. R.S. 15:542 outlines the mandatory registration requirements for sex offenders. La. R.S. 15:543(A) requires the trial court to notify a defendant charged with a sex offense in writing of the registration requirements of La. R.S.

15:542.

This Court has recognized that the trial court's failure to provide the notification constitutes an errors patent and warrants a remand for written notification. Accordingly, we remand this case with instructions to the trial judge to inform Defendant of the registration requirements for sex offenders by sending appropriate written notice to Defendant and to file written proof in the record that Defendant received such notice. *See State v. Baskin*, 15-704 (La. App. 5 Cir. 3/30/16), 188 So.3d 470, 475, *writ denied*, 16-833 (La. 4/24/17), 220 So.3d 741 (where this Court stated that the record indicated that the trial judge did not provide written notification of the registration requirements. This Court remanded the matter and ordered the trial court to inform the defendant of the registration requirements of La. R.S. 15:542 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof in the record that the defendant received such notice.).

**DECREE**

For the foregoing reasons, we affirm Defendant's 30-year sentence for possession of pornography involving juveniles under the age of 13. Additionally, we remand the matter to the trial court with instructions concerning Defendant's sex offender registration.

**<u>AFFIRMED;</u>**
**<u>REMANDED WITH INSTRUCTIONS</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 24, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-427

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
JULIET L. CLARK (APPELLEE)          MONIQUE D. NOLAN (APPELLEE)          THOMAS J. BUTLER (APPELLEE)
LIEU T. VO CLARK (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
PIPER DIDIER (APPELLEE)
DISTRICT ATTORNEY
TAYLOR SOMERVILLE (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053